**Angel Diaz NUNEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–95–00273–CR.**

Court of Appeals of Texas, El Paso.

Dec. 19, 1996.

---

H. Thomas Hirsch, Hirsch, Stroder & Hobbs, L.L.P., Odessa, for Appellant.

Al W. Schorre, Jr., District Attorney of Midland County (on appeal only), Midland, for Appellee.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

## *OPINION*

BARAJAS, Chief Justice.

This is an appeal from a jury conviction for the offense of forgery. The court assessed punishment at five years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice probated for seven years and a $6,000 fine. We reverse the judgment of the trial court.

## I. *SUMMARY OF THE EVIDENCE*

At trial, the State utilized the testimony of Joel Hinojosa. He testified that he was injured at work when some pipes fell on his foot and broke his ankle. In September of 1990, he hired Appellant, a childhood acquaintance, to represent him in his worker's compensation case. In November of 1993, the witness and Appellant attended a hearing before the Worker's Compensation Commission where settlement of the case was discussed. The insurance company offered to settle the case for $6,000 with additional medical expenses. Hinojosa stated that he

was not pleased with the offer and Appellant agreed to waive his legal fee. Hinojosa accepted the offer of settlement.

Hinojosa signed some settlement papers brought to his home by an employee of Appellant. The settlement agreement called for a $6,000 settlement as well as medical expenses for a fixed period of time. He signed the papers in the second week of January 1994. After repeated inquiries concerning the progress of the case, Appellant responded that he was having difficulty processing the settlement as the insurance company was in receivership.

In January of 1995, Hinojosa's wife called the Worker's Compensation Commission and was sent a faxed copy of a canceled check dated February 14, 1994 for $6,000. The check was made payable to Joel Hinojosa and Appellant. The endorsement on the back of the check purporting to be Hinojosa's signature was not his signature. He testified he never received any payment on his claim.

Hinojosa filed a complaint with the Midland Police Department. He then met with Appellant at a restaurant. Appellant related that he made a mistake and was trying to correct the mistake. He offered a $3,000 payment if Hinojosa would drop the charges. Appellant admitted that he had forged the endorsement. Hinojosa contacted a police detective and obtained a tape recorder. Hinojosa recorded a phone conversation with Appellant where he made various other admissions concerning his involvement in the forgery.

A search of Appellant's office revealed that there was no entry in Appellant's trust account for the amount of $6,000. A receipt for $6,000 referenced to Hinojosa was found in the office.

The pertinent part of the indictment read:

AND THE GRAND JURORS AFORESAID, upon their oaths aforesaid, do further present in and to said court that on or about the 22nd day of February A.D., 1994, in said County and State, and anterior to the presentment of this indictment, ANGEL DIAZ NUNEZ did then and there, with the intent to defraud and harm another, alter and make and complete and execute and authenticate a writing so that it purports to be the act of another who did not authorize that act, to wit: the act of Joel Hinojosa, which said writing is to the tenor following:

(tenor of writing photographically reproduced in indictment)

And the said writing purports to be and is a check;

The application paragraph of the charge to the jury read:

Now if you find from the evidence beyond a reasonable doubt that on or about the 22nd day of February, 1994 in Midland County, Texas, the defendant, ANGEL DIAZ NUNEZ, did with intent to defraud or harm another, alter **and** make **and** complete **and** execute **and** authenticate a writing so that is (sic) purported to be the act of another who did not authorize that act, to-wit: the act of JOEL HINOJOSA, which said writing is to the tenor set forth in the indictment, then you will find the defendant guilty of Forgery as charged and you shall not return a verdict on the remaining charges. (Emphasis added).

There was no objection to the charge on the part of either party.

## II. DISCUSSION

In Point of Error No. One, Appellant maintains that there is insufficient evidence to support the conviction. We agree.

In reviewing the sufficiency of the evidence to support a criminal conviction, the appellate courts are constrained to view all the evidence in a light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime as alleged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319–20, 99 S.Ct. 2781, 2789–90, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 159 (Tex.Crim.App.1991); *Nevarez v. State*, 847 S.W.2d 637, 643 (Tex.App.—El Paso 1993, pet. ref'd). The role of the appellate court is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. *Stoker v. State*, 788 S.W.2d 1, 6 (Tex. Crim.App.1989), *cert. denied*, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). Nor

does the court resolve any conflict of fact or assign credibility to the witnesses as it was the function of the trier of fact to accept or reject any, part, or all of any witness's testimony. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992). Instead, an appellate court's duty is only to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in a light most favorable to the verdict. *Adelman*, 828 S.W.2d at 421–22. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991), *quoting Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim. App.1988). In cases where the evidence is legally insufficient to support the conviction, a retrial is prohibited and a judgment of acquittal must be entered. *Meraz v. State*, 785 S.W.2d 146, 156 (Tex.Crim.App.1990). The sufficiency of the evidence is measured against the application paragraph of the charge to the jury. *Geesa v. State*, 820 S.W.2d 154, 159 (Tex.Crim.App.1991).

The relevant portions of Tex.Penal Code Ann. § 32.21(a)(1)(A)(i) & (b) provide that forgery means to alter, make, complete, execute, or authenticate any writing so that it purports to be the act of another who did not authorize that act with the intent to harm or defraud another. In the present case, the jury was instructed that they had to find that "ANGEL DIAZ NUNEZ, did with intent to defraud or harm another, alter and make and complete and execute and authenticate a writing so that is (sic) purported to be the act of another who did not authorize that act, to-wit; . . . ." Absent an objection to the charge from the State, the State accepts any greater burden of proof placed upon it by the charge to the jury. *Nickerson v. State*, 782 S.W.2d 887, 890 (Tex.Crim.App.1990). Theories for conviction alleged in the conjunctive in the charge must be proved by the State. *Id.*

In the instant case, the State was required to prove that Appellant altered **and** made **and** completed **and** executed **and** au-thenticated a writing. Appellant asserts that the State failed to demonstrate that his conduct comprised all the variations which constitute forgery.[1] Once again, we agree. Regarding the making of a check, the maker is the drawer and the drawer of a check is the person who signs it and guarantees its payment in the event of dishonor. *Rochelle v. State*, 737 S.W.2d 843, 844 n. 1 (Tex.App.—Dallas 1987), *affirmed*, 791 S.W.2d 121 (Tex. Crim.App.1990). In no sense can the evidence in this case be construed to determine that Appellant was the maker of the check. It is clear that the check was issued by the insurance company that guaranteed its payment. The State urges a definition of "make" found in The Random House College Dictionary which states that "make" means "to produce; cause to exist; bring about" and various other general definitions. The State combines this definition with the asserted proposition that Appellant's act of endorsing the check established the check as a valid instrument that could be negotiated by mere passing thereby causing the check to be "made." The State cites no authority for this proposition and we find its position untenable as this would obviate any difference between the varying types of forgery. Further, Tex. Penal Code Ann. § 1.05(b)(Vernon 1994) provides "Unless a different construction is required by the context, Sections 311.011, 311.012, 311.014, 311.015, and 311.021 through 311.032 of Chapter 311, Government Code (Code Construction Act), apply to the construction of this code." Tex. Gov't Code Ann. § 311.011(b)(Vernon 1988) provides that words having a technical or particular meaning must be construed according to that meaning. *Dinkins v. State*, 894 S.W.2d 330, 340 (Tex.Crim.App.1995). Under the above-mentioned authority, the term "maker" clearly has a particularized meaning regarding the forgery of a check. As the State failed to demonstrate that Appellant made the check in question, we find the evidence to be insufficient.[2] Point of Error No. One is sustained.

---

1. None of these terms were defined in the charge and neither party requested such definitions.

2. Appellant also contends that the other forms of forgery were not proven. However, given the evidentiary failure concerning the making of the check, we find no need to extend our analysis.

Given the prior discussion, we need not address the remaining points of error. We reverse the judgment of the trial court and order the trial court to enter a judgment of acquittal.