Angel Diaz NUNEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–99–00022–CR.

Court of Appeals of Texas, El Paso.

Aug. 24, 2000.

Eric L. Lindstrom, Carolyn Day Thurmond, Midland, for Appellant.

Laura Kathryn Popps, Asst. Atty. Gen., Eric Kalenak, Asst. Dist. Atty., Midland, for State.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## OPINION

SUSAN LARSEN, Justice.

Angel Diaz Nunez appeals his conviction for witness tampering. The jury assessed punishment at 180 days confinement, placed him on community supervision for three years, and imposed a fine of $5,000. In addition, the trial court required that Nunez pay restitution of $4,500 to the State Bar of Texas. We affirm.

### FACTS AND PROCEDURAL HISTORY

In September 1990, Nunez's childhood friend Joel Hinojosa hired Angel Diaz Nunez to represent Hinojosa in a workers' compensation claim. In January 1994, the parties entered into a $6,000 settlement agreement. The check, which was admitted as State's Exhibit 2, was mailed to Nunez on February 22, 1994, and it cleared the bank on March 2, 1994. From March to December of 1994, Hinojosa contacted Nunez several times to seek the status of the settlement check, but Hinojosa was told only that the insurance company had not yet delivered the check to Nunez's office and that it would be delayed even longer because of "the receivership they would go through." In January 1995, after many unreturned phone calls to Nunez, Hinojosa called the insurance company, and as a result of that phone conversation, Hinojosa notified the workers' compensation office and filed a complaint with the State Bar of Texas, the District Attorney's Office, and the police department. In his complaint, Hinojosa alleged that Nunez had committed forgery with the settlement check.

Several days later, Nunez called Hinojosa and arranged a meeting at a local restaurant where Nunez asked Hinojosa to drop the charges the next day in exchange for future payments of $3,000 within a few weeks and the remaining amount owed within three months. If Hinojosa decided not to drop the charges, then Nunez assured Hinojosa that Nunez would "drag it

on as long as he could" so that there would be a good chance that Hinojosa would never see any money. During their discussion, Hinojosa asked Nunez what had happened to the settlement check, and Nunez stated that he had signed Hinojosa's name on it.

Over the next few weeks, Hinojosa and Nunez had approximately six conversations about the money and dropping the charges, the third of which Hinojosa tape recorded with the assistance of Midland Police Department Detective Bernard E. Kraft, Jr. That audiotape was admitted without objection as State's Exhibit 3.

Nunez was originally charged with a four-count indictment for tampering with a witness, forgery, theft, and misapplication of fiduciary property. The trial court severed the witness tampering count from the other counts of the indictment, and it was tried separately · from the remaining charges.

At trial on the forgery, theft, and misapplication charges, the jury convicted Nunez of forgery.[1] This court reversed, finding insufficient evidence to support the judgment because the State failed to prove that Nunez was the maker of the check, which the State was required to prove based on the conjunctive wording of the indictment and jury charge.[2] Accordingly, this court ordered the trial court to enter a judgment of acquittal.[3]

On the severed witness tampering count, Nunez pleaded not guilty and the case was tried to a jury. The jury found him guilty of tampering with a witness and assessed punishment. It is from this conviction that Nunez now appeals.

### Points One, Two, and Three: Evidence of Wrongdoing

### Resulting in Acquittal on Appeal, Rule 404(b), and Rule 403

Nunez contends that the trial court erred in admitting evidence of forgery

---

1. *See Nunez v. State*, 940 S.W.2d 710, 711 (Tex.App.—El Paso 1996, no pet.).

2. *See id.* at 713.

3. *Id.* at 714.

throughout the trial because Nunez was ultimately acquitted of forgery. Specifically, Nunez complains of: (1) the State's question over his objection to the venirepanel about whether they had heard of this case in the media;[4] (2) the prosecutor's mention during his opening statement over his objection that a check had been issued to Hinojosa and cashed without his knowledge;[5] (3) Hinojosa's testimony during direct examination over his objection regarding statements in which Nunez admitted endorsing Hinojosa's name on the settlement check; (4) the admission into evidence over his objection of the settlement agreement and settlement check. Nunez adds that it was only when the prosecutor specifically stated that "we want to talk about this forgery of this check and the cashing of the check" as a means to show motive in the present case that the trial court sustained Nunez's objection to the reference to a forgery and provided a limiting instruction to the jury to "disregard any remarks about a forgery at this time." It is undisputed that Nunez made timely objections to the State's forgery evidence under Tex.R. Evid. 403 and 404(b).

We review this issue under an abuse of discretion standard.[6] We find error only where the decision falls outside the zone of reasonable disagreement, and it cannot be said that the decision falls outside that zone if it can be supported under any theory of law, regardless of whether the theory went unmentioned at trial.[7]

An extraneous offense is defined as any act of misconduct, whether resulting in prosecution or not, that is not shown in the charging papers.[8] The indictment here necessarily refers to Nunez's prosecution for forgery, and therefore forgery cannot be considered extraneous to the witness tampering offense for which Nunez was on trial. The indictment read:

In the name and by authority of the State of Texas, the Grand Jury for the County of Midland, State of Texas, duly selected, impaneled, sworn, charged and organized as such by the 238th District Court for said county, upon their oaths present in and to said Court that Angel Diaz Nunez, her[e]inafter styled Defendant, on or about the 19th day of January, A.D., 1995, and before the presentment of this indictment, in the county and state aforesaid, offered and agreed to confer a benefit on a prospective witness in an official proceeding, Joel Hinojosa, with intent to influence the said Joel Hinojosa *to abstain from and discontinue the prosecution of* the said Angel Diaz Nunez, against the peace and dignity of the State. (Emphasis added).

The prosecution which Nunez intended to influence, as charged in the indictment, was the forgery at issue here. Any contention that the trial court erred in admit-

---

4. The prosecutor stated:

All right. Ladies and gentlemen, as I was saying, the Defendant was indicted for the offense—and again, an indictment is not evidence of guilt[.] I'm not asking you to presume the Defendant is guilty of the crime he is charged with here today because he was indicted in the past, I just am asking you this to see if this triggers anyone's memory of this case to see if anyone's heard of this.

Again, the Defendant was indicted for the offense of forgery, misapplication of fiduciary property and tampering with a witness, and I'm wondering, has anyone heard of this case?

Defense counsel's running objection on the basis of extraneous offense was overruled.

5. The prosecutor forecasted the evidence as follows:

I believe the evidence will show that Mr. Hinojosa was not aware that this check had been issued. I think the evidence will also show that the check was cashed in the last couple of days of February.

Defense counsel's 403 and 404(b) objections to this statement were overruled.

6. *Lincicome v. State*, 3 S.W.3d 644, 649 (Tex. App.—Amarillo 1999, no pet.).

7. *Id.*

8. *Rankin v. State*, 953 S.W.2d 740, 741 (Tex. Crim.App.1996).

ting extraneous offense evidence is without merit for this reason.

▮ We next examine whether the forgery evidence should have been excluded under TEX.R. EVID. 404(b), which prohibits evidence of crimes or bad acts committed by the accused to prove the character of the person and that the accused acted in conformity with that character.[9] The gravamen of this rule is that a defendant is to be tried only for the offense charged and not for being a criminal in general.[10] Nevertheless, extraneous offense testimony is not always inadmissible.[11] Evidence of extraneous offenses or bad acts have generally been held admissible to show the context in which the criminal act occurred or to show motive.[12] The trial court may determine whether admission of the evidence serves some purpose other than character conformity,[13] and that determination should not be disturbed by an appellate court absent a clear abuse of discretion.[14]

We find that the trial court did not abuse its discretion in allowing the State's statements because its decision was supported by a theory of law. Specifically, evidence of the forgery was admissible in the witness tampering trial to show Nunez's continuing course of conduct. The

evidence of forgery provided a proper perspective from which the jury could assess the indicted offense.[15] Further, the forgery evidence was "same transaction contextual evidence."[16] Evidence of extraneous offenses is admissible to show the context in which a criminal act occurred.[17] This is because events do not occur in a vacuum and jurors have a right to hear about events surrounding the indicted act so they may realistically evaluate the evidence.[18] Here, although a legally separate offense, the forgery evidence was " 'blended or interwoven' " with the indicted offense, and was " 'essential to understanding the context and circumstances' " of the crime charged.[19] The forgery evidence provided the jury with insight into Nunez's intent and motive for tampering with this particular witness and explained why Hinojosa met with Nunez at all. Because the forgery evidence was part of the same transaction as the witness tampering evidence, the alleged forgery evidence was relevant, the determination of which is necessary in a Rule 404(b) analysis.[20]

▮ After a trial judge has ruled that misconduct evidence is relevant beyond its character conformity value, the opponent must then make a further objection based

9. TEX.R. EVID. 404(b).

10. *Thacker v. State*, 889 S.W.2d 380, 392 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd), *cert. denied*, 516 U.S. 810, 116 S.Ct. 57, 133 L.Ed.2d 21 (1995); *Hilliard v. State*, 881 S.W.2d 917, 920 (Tex.App.—Fort Worth 1994, no pet.).

11. *Dabney v. State*, 816 S.W.2d 525, 527 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd).

12. *See id.*

13. *Thacker*, 889 S.W.2d at 392–93.

14. *See Nolen v. State*, 872 S.W.2d 807, 812 (Tex.App.—Fort Worth 1994, pet. ref'd); *Creekmore v. State*, 860 S.W.2d 880, 884 (Tex. App.—San Antonio 1993, pet. ref'd) (explaining standard of review in context of 404(b) and 403).

15. *See Kester v. State*, 636 S.W.2d 232, 234 (Tex.App.—El Paso 1982, no pet.) (finding continuing scheme in sexual abuse case).

16. *See Santellan v. State*, 939 S.W.2d 155, 168 (Tex.Crim.App.1997).

17. *Cummings v. State*, 651 S.W.2d 14, 17 (Tex.App.—Amarillo 1983, no pet.).

18. *Id.*

19. *See Santellan*, 939 S.W.2d at 168 (quoting *Camacho v. State*, 864 S.W.2d 524 (Tex.Crim. App.1993), *cert. denied*, 510 U.S. 1215, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994)).

20. *See id.* at 167.

on Rule 403.[21] At that point, the trial judge must weigh the probativeness of the evidence to see if it is substantially outweighed by its potential for unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence.[22] In keeping with the presumption of admissibility of relevant evidence, there is a presumption that relevant evidence is more probative than prejudicial.[23] Although we will reverse only upon a clear abuse of discretion, we must do more than decide whether the trial judge conducted the required balancing between probative and prejudicial values; the trial court's determination must be reasonable in view of all relevant facts.[24]

■ Here, Nunez contends that prejudice outweighed probative value because, to prove its case, the State had to prove only that an "official proceeding" was underway, which was accomplished through Officer Kraft's testimony that he conducted an investigation and that Nunez was subsequently indicted. According to Nunez, the State did not have to prove any sort of motive, and thus, there was no need for the forgery allegation to provide background information for the jury. We disagree.

Texas Penal Code Section 36.05 provides:

### § 36.05. Tampering With Witness

(a) A person commits an offense if, with intent to influence the witness, *he offers, confers, or agrees to confer any benefit on a witness* or prospective witness in an official proceeding *or coerces a witness or prospective witness in an official proceeding:*

(1) to testify falsely;

(2) to withhold any testimony, information, document, or thing;

(3) to elude legal process summoning him to testify or supply evidence;

(4) to absent himself from an official proceeding to which he has been legally summoned; or

(5) *to abstain from, discontinue, or delay the prosecution of another.*[25]

We conclude that here, evidence of forgery was an important part of proving the State's case in this cause. This evidence went to an element of the crime, and it also explained the context of Nunez's conduct; without it, the rest of the evidence would not have made sense to the jury. Accordingly, the trial court did not abuse its discretion in allowing the State's statements about the alleged forgery because that evidence was more probative than prejudicial.

Nunez's first, second, and third points are overruled.

### Point Four: Admission of Improper Impeachment v. The Rule of Optional Completeness

■ In his fourth point, Nunez contends that the trial court erred in overruling his objection under Texas Rule of Evidence 609 when the State questioned him about his forgery conviction during his cross-examination, urging that a conviction that has been reversed is not a final conviction and therefore it cannot be used for impeachment purposes.

In response, the State contends that pursuant to TEX.R. EVID. 107, the Rule of Optional Completeness, it was entitled to elicit this testimony because Nunez had opened the door during his direct examination when he testified that he was acquitted of forgery by the appellate court, and

---

21. *See id.* at 169.

22. *Id.; see Cummings,* 651 S.W.2d at 17 (adding that extraneous offense evidence to show context in which charged criminal act occurred must also be more probative than inflammatory).

23. *Santellan,* 939 S.W.2d at 169.

24. *See Santellan,* 939 S.W.2d at 169.

25. TEX. PENAL CODE ANN. § 36.05 (Vernon Supp.2000) (emphasis added).

cross-examination on this point was necessary as without it, the jury would have been left with a false impression regarding the reasons for Nunez's acquittal.

Texas Rule of Evidence 107 states:

When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other; and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence.... [26]

During Nunez's direct examination, the following dialogue took place:

DEFENSE COUNSEL: Okay. There's been some evidence in this case that you were indicted for forgery, misapplication of property or funds and theft?

NUNEZ: That's correct.

DEFENSE COUNSEL: Okay. There's been some testimony that there were hearings on those charges, is that right?

NUNEZ: There was a trial.

DEFENSE COUNSEL: What was the result of that trial?

NUNEZ: I was acquitted.

DEFENSE COUNSEL: Okay. And at what level were you acquitted, though?

NUNEZ: I was acquitted at the appeals court level.

Later, during Nunez's cross-examination the State elicited this testimony:

STATE: Mr. Nunez, isn't it true that at your previous trial, the State, because of the way they wrote the charge, was required to prove that you had made the State's Exhibit Number 2, which is the check in this case?

NUNEZ: Well, the State was required to prove elements about, yes, making the check.

STATE: Okay. Well, their charge required that they prove that you made that check, right?

NUNEZ: Right.

STATE: Okay. And the insurance company made the check, right?

NUNEZ: Actual—the actual check? Yes, the insurance company made the actual check.

STATE: Right. And the appellate court found that the State failed to prove that you had made the check instead of the insurance company?

. . .

STATE: In fact, if you look at the last page of the opinion, the last sentence of the largest paragraph at the top says, "As the State failed to demonstrate that appellant made the check in question, we find the evidence to be insufficient," isn't that true?

NUNEZ: That's what it says, yes.

STATE: And that's all the appellate court stated?

NUNEZ: No, that's not all the appellate court stated. It stated that I was acquitted based on insufficient evidence.

STATE: Right. For that reason, correct?

NUNEZ: Yes, for that reason.

Based on the record and the Rule of Optional Completeness, we cannot say that the trial court abused its discretion in permitting the State to ask these questions.

The fourth point is overruled.

### Point Five: Order for Restitution

Nunez next contends that the trial court abused its discretion in entering its order for restitution when his conviction for tampering with a witness did not support such an order.

■ Our standard of review for questions involving restitution is abuse of discretion.[27] Due process requires that

---

**26.** TEX.R. EVID. 107.

**27.** *Collins v. State,* 754 S.W.2d 818, 823 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd).

there must be evidence in the record to show that the amount set by the court has a factual basis and the amount is just.[28] The Texas Court of Criminal Appeals recently examined the role of restitution in Texas jurisprudence.[29] Although restitution might appear to be a judgment benefitting the victim, " 'the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution.' "[30] Restitution does not operate primarily for the benefit of the victim; rather, it operates for the benefit of society as a whole.[31] Society is benefitted by punishment, including restitution, that is directly related to the offenses for which a defendant has been charged and convicted.[32]

 As punishment, restitution attempts to redress the wrongs of which a defendant has been convicted.[33] Thus, the trial court may not order restitution for an offense for which the defendant is not criminally responsible, including those that have resulted in acquittal.[34] By specifically providing that a defendant may not be ordered to make payments except restitution "to the victim," the Legislature intended to limit restitution to the victim of the offense for which the defendant was convicted.[35]

Here, the trial court ordered Nunez to pay $4,500 to the State Bar of Texas, the amount it had paid Hinojosa as compensa-

tion for the workers' compensation settlement. Nunez argues that because he was convicted of tampering with a witness, not forgery, and Hinojosa suffered no monetary loss from the witness tampering, imposing a requirement of restitution was error. Additionally, he argues the disciplinary proceeding was a separate proceeding from the present cause, and the State Bar compensation resulted only from the disciplinary proceeding.

 While it is true that restitution can be ordered only for injury resulting from the offense charged and can be made only to the victim, restitution can also be ordered "where justice dictates payment be made to a person or party who has compensated the victim for the loss."[36] The statute itself states that "the court that sentences a defendant convicted of an offense may order the defendant to make restitution to *any* victim of the offense."[37]

 Here, Nunez stipulated that the State Bar paid Hinojosa $4,500 to compensate them for the money Nunez owed them when he cashed Hinojosa's settlement check. The State Bar's payment to Hinojosa resulted from the offense charged because, absent Nunez's act of signing and cashing Hinojosa's settlement check without Hinojosa's knowledge, there would have been no reason for Hinojosa to file a complaint and no need for Nunez to tamper with this witness. As noted earlier,

---

28. *Id.*

29. *See Cabla v. State,* 6 S.W.3d 543, 545 (Tex. Crim.App.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1730, 146 L.Ed.2d 650 (2000).

30. *Id.* (quoting *Kelly v. Robinson,* 479 U.S. 36, 50, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986)).

31. *Id.*

32. *Id.* at 545–46.

33. *Id.* at 546.

34. *See id.* (citing *Gordon v. State,* 707 S.W.2d 626, 629–30 (Tex.Crim.App.1986), and stating that this Court "would not allow the defen-

dant to be punished 'for a crime of which [he] was acquitted' "); *Campbell v. State,* 5 S.W.3d 693, 697 (Tex.Crim.App.1999).

35. *See Ex parte Lewis,* 892 S.W.2d 4, 6 (Tex. Crim.App.1994) (concluding that because noncomplainants were not "victims" within meaning of restitution statute, trial court was without authority to order restitution to them in that cause).

36. *See Maloy v. State,* 990 S.W.2d 442, 444 (Tex.App.—Waco 1999, no pet.) (citing *Gonzalez v. State,* 954 S.W.2d 98, 106 (Tex.App.—San Antonio 1997, no pet.)).

37. *See* Tex.Code Crim. Proc. Ann. art. 42.037(a) (Vernon Supp.2000) (emphasis added).

the indictment necessarily and elementally included the forgery and State Bar disciplinary proceedings. Furthermore, equity demands that Nunez pay restitution to the State Bar for the amount that it paid to Hinojosa; to hold otherwise would create a $4,500 windfall for Nunez and a $4,500 loss for the State Bar simply because the nature of this particular crime led to no direct monetary loss to the complainant. For these reasons, we cannot conclude that the trial court's act of ordering Nunez to pay the State Bar $4,500 was arbitrary or unreasonable. We find no abuse of discretion.

The fifth point is overruled.

### Point Six: Factual Sufficiency

Finally, Nunez asserts that there was factually insufficient evidence to support his conviction because the State failed to prove that he intended to make an offer to Hinojosa or intended to influence him to abstain or discontinue the charges against Nunez. Instead, Nunez states that although Nunez and Hinojosa met at the restaurant to discuss "the situation," Nunez had merely asked Hinojosa to work out payment arrangements for the settlement proceeds and had simply discussed Hinojosa's ability to withdraw the complaints with the police and the State Bar, both acts of which were insufficient to sustain the conviction of tampering with a witness.

In the recent case of *Johnson v. State*,[38] the Texas Court of Criminal Appeals reiterated the standard of review for an appellate court in a factual sufficiency analysis. We review all the evidence in a neutral light, rather than in the light most favorable to the prosecution, and we set aside the verdict only if it is so contrary to the

overwhelming weight of the evidence as to be clearly wrong and unjust.[39] We review the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it with the evidence that tends to disprove that fact.[40] Although this court is authorized to disagree with the fact finder's determination, we must nevertheless employ appropriate, but not absolute, deference to prevent substituting this court's judgment for that of the fact finder, and any evaluation by this court should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility given to witness testimony.[41]

The degree of deference a reviewing court provides must be proportionate with the facts it can accurately glean from the trial record.[42] A factual sufficiency analysis can consider only those few matters bearing on credibility that can be fully determined from a cold appellate record.[43] The authority granted to this court to disagree with the fact finder's determination is appropriate only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice.[44] Otherwise, due deference must be accorded the fact finder's determinations, particularly those determinations concerning the weight and credibility of the evidence.[45]

▬▬ Here, the question is whether there was factually sufficient evidence to prove that Nunez intended to influence Hinojosa to abstain from or discontinue the criminal and disciplinary charges. We find there was sufficient evidence.

At trial, Hinojosa testified that he filed a forgery complaint with local police, as well as a complaint with the State Bar of Texas, after he spoke with the insurance company

38. 23 S.W.3d 1 (Tex.Crim.App. 2000).

39. *Johnson*, at 7.

40. *Id.*

41. *Id.* at 7–9.

42. *Id.* at 7.

43. *Id.*

44. *Id.*

45. *Id.*

about the status on his settlement check. A couple of days later, Nunez called Hinojosa and arranged the meeting at the restaurant. According to Hinojosa, Nunez wanted Hinojosa to drop the charges in exchange for $3,000, partial payment of the amount Nunez owed Hinojosa from the settlement check. If Hinojosa did not drop the charges the next day, Nunez promised to "drag it on as long as he could" so that Hinojosa would never see his money. Over the next few weeks, Nunez and Hinojosa had similar conversations concerning the money and dropping the charges.

Hinojosa audiotaped one of these telephone conversations, which was admitted into evidence without objection. The State Bar required Nunez to respond to Hinojosa's complaint within thirty days; to save his law license, Nunez offered Hinojosa the use of his Mercedes automobile until he could get the $3,000 he had promised to give Hinojosa at the restaurant. Amidst displays of contrition, Nunez added, "All you have to do is go and withdraw that criminal complaint at the D.A.'s office and write a notice to the State Bar that you're withdrawing your complaint. That's all I'm asking you and you can have that immediately. That's going to be much better than what's going to happen to me. That's all I can do. You can have the Cadillac if you want."

Conversely, Nunez testified that at the restaurant, he discussed the seriousness of the complaints filed against him, the result of which would create problems for Nunez. Although he was unable to recall whether he asked Hinojosa to dismiss the complaints, he did remember telling them that they had the right to withdraw whatever complaints they had filed. Nunez denied telling Hinojosa that he would drag out the proceedings if they failed to drop the complaints. With regard to his intent in offering to pay money to Hinojosa, the following colloquy ensued between Nunez and his counsel:

COUNSEL: A.D., tell this jury how—how is it that you weren't trying to influence the Hinojosas to dismiss the charges by offering them money? I mean, you know, sometimes the conversations—I mean, that the two concepts are in the same—almost sometimes literally the same breath?

NUNEZ: Well, I believe we were discussing both subjects during the phone conversation at La Bodega, but in my opinion, they were not tied together. It was not a question of you do this and I'll do that. It was a question of if you're entitled to your money, then I'm going to pay you the money, but in essence, I believed I was appealing to his humanitarian side to avoid problems that I would encounter by going through a bar investigation and the criminal investigation. I didn't feel that they were connected.

COUNSEL: Did you ever condition the payment of money upon the withdrawal of the complaint?

NUNEZ: No, I did not.

During cross-examination, Nunez testified that it was just a coincidence that given the fact that Hinojosa did not drop the charges, Nunez did not pay Hinojosa any money. Nunez saw no causal connection between the two acts.

After comparing the evidence that tends to prove and disprove Nunez's intent to tamper with this witness, giving due deference to the jury's determinations on the weight and credibility of the evidence, and after reviewing this evidence in a neutral light, we find the verdict was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. The evidence was factually sufficient to support the jury's verdict.

The sixth point is overruled.

### CONCLUSION

The judgment of the trial court is affirmed.