Criminal Case Template



COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



JAVIER BAHENA NERI,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.

§


§


§


§


§

No. 08-02-00282-CR


Appeal from the


Criminal District Court No. 4


of Dallas County, Texas


(TC# F-0101144-TK)


MEMORANDUM OPINION


 Javier Bahena Neri was convicted by a jury of assaulting his wife and was
sentenced by the court to two years in prison. (1) In two issues on appeal, he argues that the
evidence is legally and factually insufficient. We affirm.

Standard of Review

 Neri was charged with "intentionally and knowingly caus[ing] bodily injury" to his
wife, Jovita Neri. See Tex. Pen. Code Ann. § 22.01(a)(1) (Vernon 2003). He argues
that the evidence is legally and factually insufficient to prove that he knowingly or
intentionally caused her bodily injury.

 To determine whether the evidence is legally sufficient, we view the evidence in
the light most favorable to the verdict to determine whether a rational jury could find the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979). The jury is the sole
judge of the weight of the evidence and the credibility of the witnesses. Drost v. State, 47
S.W.3d 41, 44 (Tex. App.--El Paso 2001, pet. ref'd).

 To determine whether the evidence is factually sufficient, we view all the evidence
in a neutral light, rather than in the light most favorable to the verdict. Johnson v. State,
23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim.
App. 1996); Nunez v. State, 27 S.W.3d 210, 218 (Tex. App.--El Paso 2000, no pet.). We
review the evidence weighed by the jury that tends to prove the existence of the elemental
fact in dispute and compare it with the evidence that tends to disprove that fact. Johnson,
23 S.W.3d at 7; Nunez, 27 S.W.3d at 218. We must reverse if the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, or if the proof of
guilt, although adequate standing alone, is greatly outweighed by contrary proof. 
Johnson, 23 S.W.3d at 11. Generally, we must defer to the jury's determinations
regarding the weight and credibility of the evidence. Id. at 9. We may set aside the jury's
determinations "only when the record clearly indicates such a step is necessary to arrest
the occurrence of a manifest injustice." Id.


The Evidence

 Jovita testified that she arrived home from work at around 7:30 one morning. She
was tired and wanted to go to sleep. Javier was already in bed asleep. The left side of the
bed was against a wall, and Javier was on the right side of the bed, so she had to cross
over him to get into bed. Javier woke up and suggested that they have sex. He appeared
to be drunk. Jovita indicated that she did not want to have sex. Javier slapped her, and a
struggle ensued. Jovita tried to push him away with her feet. She testified that Javier
"wanted to keep on striking me," but he did not strike her again because she "blocked him
with [her] hands." She also testified that "he wanted to keep on fighting" her, but she put
her "hands in between." Javier eventually pushed her off of the end of the bed and onto
the floor. He got on top of her and started choking her neck. Jovita testified that she
"only [had her] right hand that [she] could do something with," so she grabbed Javier's
testicles with that hand and squeezed until he released her. She then called the police. 
Pictures showing marks on Jovita's hand, leg, and neck were admitted into evidence. Jovita testified that a divorce hearing was scheduled for two weeks after this trial. 
She denied that she told Javier she would get custody of their children once he was found
guilty of assaulting her.

 Javier testified that after his earlier assault conviction, Jovita moved out of their
house, and he stayed there with their children. Jovita moved back in with them almost
three months before this incident. Javier claimed that Jovita's drug use had contributed to
their decision to separate.

 Javier testified that he was not drunk on the morning in question, but he had been
drinking up until about midnight. He was not asleep when Jovita came home; instead, he
was dressed and ready for work. Jovita came in and set her purse down. Javier found
drugs in the purse while he was looking for his ATM card. When he confronted Jovita
with what he had found, she "lost control completely" and started to "attack" and
"scratch" him. Javier denied requesting sex from Jovita, slapping her, or choking her. 
He said that Jovita may have been injured while he was defending himself against her.

 Javier claimed that although he told the police officers that Jovita attacked him
because he found drugs in her purse, the officers did not search for the drugs. He showed
the officers the scratches on his neck, arms, and face, and they asked if he needed medical
treatment because he was bleeding from one of the scratches. Javier testified that the
officers also took pictures of the scratches. (2)

 According to Javier, Jovita told him that she was going to get custody of the
children once he was found guilty in this case.

 The primary investigating police officer for this case was in training at the time
and had left the police force before the trial. The officer who was training him, Officer
Lozada, accompanied him to the Neris' house. A third officer, Officer Smith, was called
in for back-up. At the time of trial, Lozada was on administrative leave for an unstated
reason.

 Lozada testified that the officers concluded that Javier had assaulted Jovita based
on the information she provided. Although he saw scratches on Javier's neck, upper right
arm, and face, he believed those injuries were consistent with Jovita's claim that Javier
was the aggressor. Lozada admitted that if Jovita only had her right hand free and she
used that hand to grab Javier's testicles, then the scratches on the right side of Javier's
body would not be consistent with self-defense. Lozada did not believe Javier's injuries
were severe enough to warrant medical treatment, but it is department policy to offer
medical treatment.

 According to Lozada, Javier did not mention that Jovita had drugs. If he had
mentioned the drugs, the officers "probably" would have searched for them.

 Lozada's testimony indicated that Jovita did not give the officers all of the details
of the assault that she included in her testimony. For example, she did not mention that
the assault began after she refused to have sex with Javier.

 Lozada believed that Javier was intoxicated on the morning in question. Smith did
not have any direct contact with Javier. Smith and Lozada agreed that Jovita did not
appear to be under the influence of drugs or alcohol. Smith conceded that it was possible
that she was under the influence of drugs and that he simply did not realize it at the time.


Discussion

 To establish that the evidence is legally and factually insufficient, Javier attacks
the credibility and reliability of the testimony of Jovita and the police officers.

 First, he argues that his version of the facts is logical, but Jovita's is not. He notes
that Jovita testified that she was on the side of the bed that was against the wall, that she
pushed Javier away from her with her feet, and that he pushed her off of the end of the
bed. Javier argues that in this scenario, it would be more likely that Jovita would have
pushed him off the bed than that he would have pushed her off the bed. He also notes
that Jovita indicated that only her right hand was free and she used that hand to grab his
testicles. He argues that this testimony is inconsistent with the undisputed testimony that
he had injuries on the right side of his body. He asserts that if he was on top of her, only
her right hand was free, and she used that hand to grab his testicles, then she could not
have scratched him at all, much less on the right side of his body.

 Second, Javier suggests that Jovita was not a credible witness because they were in
the midst of a divorce and she wanted him to be convicted of this offense in order to get
custody of the children. He also points to his testimony that Jovita abuses drugs.

 Third, Javier implies that the police officers' testimony was not reliable because
neither of the officers was the primary investigating officer. Furthermore, the officer who
did the investigation was only a trainee.

 We conclude that the evidence is legally sufficient to support the conviction. 
Jovita's testimony, recited above, and the pictures admitted into evidence are sufficient to
establish that Javier knowingly and intentionally caused her bodily injury.

 We also conclude that the evidence is factually sufficient. We have compared the
evidence supporting Jovita's version of the incident with the evidence supporting Javier's
version. The evidence supporting Jovita's version is not so obviously weak as to
undermine confidence in the jury's determination, nor is it greatly outweighed by the
contrary evidence.

 We disagree with Javier's contention that Jovita's testimony was not logical. She
testified that she and Javier struggled while they were on the bed, that she "blocked him
with [her] hands," and that she put her "hands in between" herself and Javier. The jury
could infer from this testimony that during the struggle Jovita scratched Javier and that
Javier ended up in a position that allowed him to push her off the bed.

 As for Javier's assertions that Jovita abused drugs and wanted him to be convicted
so that she could get custody of their children, the jury apparently found Javier's
testimony on these subjects unbelievable or irrelevant. We can find no reason in the cold
record before us to disturb this credibility determination. See Johnson, 23 S.W.3d at 8-9. 
Likewise, we see no reason to disturb the jury's apparent determination that the police
officers' testimony was more reliable and credible than Javier's. See id.


Conclusion

 We overrule both issues and affirm the judgment of conviction.


 SUSAN LARSEN, Justice

June 12, 2003


Before Panel No. 1

Larsen, McClure, and Chew, JJ.


(Do Not Publish)

1. The offense was a third-degree felony because Neri had a previous conviction for
assaulting his wife. See Tex. Pen. Code Ann. § 22.01(a)(1), (b)(2) (Vernon 2003).
2. Javier was apparently referring to his booking pictures. The defense did not offer any
pictures into evidence.