COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
| --- | --- | --- |
| GEORGE BERTRAM MATHISON, IV, | § | No. 08-10-00098-CR |
| Appellant, | § | Appeal from the |
| v. | § | 396th Judicial District Court |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| Appellee. | § | (TC# 1093066D) |

**O P I N I O N**

George Bertram Mathison, IV, was charged with theft of property valued between $100,000 and $200,000. Pursuant to a plea agreement, he pled guilty to theft of property valued between $20,000 and $100,000, and the State recommended that he receive deferred adjudication and pay restitution in an amount to be determined by the trial court. In accordance with the plea agreement, the court deferred the adjudication of guilt and placed Mathison on community supervision for ten (10) years. The court subsequently conducted an evidentiary hearing and ordered Mathison to pay $193,700 in restitution as a condition of community supervision. Mathison raises six issues on appeal. We affirm.[1]

---

[1] In the written plea agreement, Mathison states, "I give up and waive any and all rights of appeal in this case." On the day that the plea agreement was signed, the trial court entered a certification of defendant's right of appeal, stating that this is a plea-bargain case and Mathison has no right of appeal, and also that Mathison waived the right to appeal. After the restitution order was entered, Mathison filed a notice of appeal "specific to the amount of restitution." The trial court subsequently entered a second certification of defendant's right of appeal, stating that Mathison had received permission to appeal and that the appeal "involves another appealable order," namely, the restitution order. The State does not challenge our authority to consider any of the issues raised in

### *Factual Basis for Amount of Restitution*

In his second issue, Mathison asserts that the amount of restitution is not supported by the record. We review this issue for an abuse of discretion. *Nunez v. State*, 27 S.W.3d 210, 216 (Tex.App.--El Paso 2000, no pet.). We will uphold the restitution order if it is just and if there is a factual basis in the record for the amount found by the trial court. *See id*. at 216-17.

The record reflects that Jon Aubrey was the president and founder of a corporation called Bentwater Construction. He owned all of the corporation's shares. Mathison was a vice-president of Bentwater. Aubrey testified that Mathison was paid a weekly salary and was entitled to a commission based on profitable work that he brought into the corporation. According to Aubrey, Mathison never earned a commission because none of his projects were profitable. Aubrey testified that he provided the prosecution with copies of Mathison's expense accounts, which would show instances in which Mathison paid for items such as software and was reimbursed from corporate funds. He also provided the prosecution with copies of "1099s" for all of Bentwater's employees. Defense counsel questioned Aubrey about funds that Aubrey had withdrawn from Bentwater's bank account, suggesting that these were illicit transactions.

---

this appeal. We express no opinion as to whether a plea-bargaining defendant may ordinarily appeal a restitution order. *But see Stretcher v. State*, No. 06-08-00233-CR, 2009 WL 3672882, at *3 (Tex.App.--Texarkana Nov. 6, 2009, no pet.)(memo op., not designated for publication)("Stretcher essentially argues that when he agreed to allow the trial court to set the amount of restitution, he did not anticipate such a large amount. Since the parties entered a negotiated plea agreement and that agreement specifically allowed the trial court to set the amount of restitution, which it did after conducting an evidentiary hearing, we find that Stretcher does not meet the narrow grounds available to appeal a negotiated plea agreement."). Because the certification states that the trial court granted Mathison permission to appeal and does not expressly limit the grounds of appeal, we will address all of the issues raised by Mathison, including his claim that his plea was involuntary. *But see Cooper v. State*, 45 S.W.3d 77, 77 (Tex.Crim.App. 2001)(holding that a plea-bargaining defendant may not appeal the voluntariness of the plea).

Phillip Morris, a forensic financial analyst for Tarrant County, testified that he reviewed bank account transactions for Mathison's personal bank account and for Bentwater's account. He prepared charts showing unauthorized withdrawals that Mathison made from Bentwater's account in 2003 and 2004. One of the charts showed a total of $193,700 in withdrawals. Morris testified that most of these funds were deposited into Mathison's personal account on the day they were withdrawn or soon thereafter. To support his testimony, Morris prepared a spreadsheet correlating the withdrawals with deposits into Mathison's bank account. For example, the spreadsheet showed that on August 30, 2004, Mathison withdrew $60,000 to purchase a cashier's check made out to himself for the purpose of "Mathison Earned Income/Commission." That same day, he deposited $60,000 into his personal account. On August 6, 2004, he withdrew $9,700 from Bentwater's account, noting "Re: Aubry Trans" on the withdrawal slip. That same day, he deposited $9,300 into his personal account. Morris testified, without objection, that Aubrey told him that all of the withdrawals reflected in this chart and spreadsheet were made without consent. He also reviewed Mathison's W-2 forms and Texas Workforce Commission records to determine Mathison's reported compensation. He did not include any of the reported compensation in the $193,700 total. Morris specifically testified that he did not find any 1099s to indicate that the $60,000 withdrawal for "earned income/commission" constituted legitimate compensation. Aubrey testified that there was no 1099 for this amount. Morris deduced that notations such as "earned income/commission" and "Re: Aubry Trans" were simply attempts to cover-up the fact that Mathison was stealing money.

On cross-examination, Morris testified that he did not know that Aubrey had taken money out of Bentwater's account for his personal benefit, nor did he know that Aubrey asked Mathison

to make certain withdrawals for Aubrey's benefit. Based on Mathison's position within the company, Morris indicated that he may have been authorized to purchase software and office supplies and to pay vendors. But Morris did not review any documentation regarding these types of transactions. Both Morris and Aubrey acknowledged that Mathison had authority to withdraw funds from the bank.

Mathison testified that he and Aubrey agreed that he would not take a salary, but would be paid a commission based on projects that he brought to the company. According to Mathison, Bentwater was in financial disarray when he joined the company, and Aubrey was "notorious" for coming up with reasons not to pay people. He claimed that he earned over $202,000 in commissions, that he had the authority to pay himself, and that he did pay himself. He also claimed that on numerous occasions, he withdrew corporate funds to buy cashier's checks to make corporate purchases as a result of Bentwater's bad credit. Mathison admitted that he did not receive a 1099 for the $60,000 withdrawal and that he did not report it or the other funds that he withdrew on his tax return. He acknowledged that he had pled guilty to stealing from Aubrey and that he owed him "a little bit" of money. Nevertheless, he testified that the "whole premise" of his prosecution was to provide a defense for Aubrey in a civil suit. Aubrey and Bentwater had been sued for their failure to pay subcontractors on a project. Aubrey filed a third-party claim in that suit against Mathison, claiming Mathison's embezzlement led to the nonpayment. Mathison testified that Aubrey needed "a solid verdict against [Mathison] in order to protect himself from this lawsuit."

Mathison complains on appeal that the trial court erroneously assumed from Morris's testimony that $193,700 in withdrawals were unauthorized, even though Aubrey never testified

-4-

to the precise amount of the unauthorized withdrawals. The lack of testimony from Aubrey is immaterial because Morris testified that, based on his conversation with Aubrey, the entire $193,700 amount was unauthorized. Mathison also contends that the trial court failed to consider what Aubrey owed Mathison for his services to Bentwater. We believe the court simply resolved a credibility issue against Mathison. Aubrey testified that Mathison was paid a salary and that he never actually earned a commission. Morris testified that the $193,700 sum excluded Mathison's salary. We conclude that there is an ample factual basis for the amount of restitution awarded and that the amount is just.

Mathison's second issue is overruled.

### *Oral Pronouncement of Amount of Restitution*

In his first issue, Mathison asserts that the restitution order must be vacated because the trial court did not orally pronounce the amount of restitution. The Texas Code of Criminal Procedure states that "sentence shall be pronounced in the defendant's presence." TEX.CODE CRIM.PROC.ANN. art. 42.03, § 1(a)(West Supp. 2011). Based on this statute, the Court of Criminal Appeals has held, "A defendant's sentence must be pronounced orally in his presence. The judgment, including the sentence assessed, is just the written declaration and embodiment of that oral pronouncement. When there is a conflict between the oral pronouncement of sentence and the sentence in the written judgment, the oral pronouncement controls." *Taylor v. State*, 131 S.W.3d 497, 500 (Tex.Crim.App. 2004)(footnotes omitted). Restitution is a form of punishment. *Weir v. State*, 278 S.W.3d 364, 366 & n.6 (Tex.Crim.App. 2009). Accordingly, restitution cannot be included in the written judgment of conviction unless it was included in the oral pronouncement of sentence. *See Sauceda v. State*, 309 S.W.3d 767, 769 (Tex.App.--Amarillo

-5-

2010, pet. ref'd); *Alexander v. State*, 301 S.W.3d 361, 363-64 (Tex.App.--Fort Worth 2009, no

pet.); *cf. Taylor*, 131 S.W.3d at 500-02 (holding that fine should be deleted from judgment

because it was not orally pronounced when deferred adjudication was revoked).

In this case, the following exchange occurred at the end of the restitution hearing:

| The Court: | What I'd like to do is take everything under advisement, look at all of the documents, and if I have any questions I'll get back with counsel, otherwise I'll submit a written finding. |
| --- | --- |
| Defense Counsel: | Yes, Your Honor. |
| The Court: | Is that agreeable with the State? |
| Prosecutor: | That's fine. |
| Defense Counsel: | Yes, Your Honor. |

The court subsequently entered the written order requiring Mathison to pay $193,700 in

restitution. The court also entered a written judgment. Attached to the judgment is a document

entitled "Conditions of Community Supervision," which was signed by Mathison and which lists

the restitution order as a condition of community supervision. Mathison argues that there is a

conflict between the written judgment and the oral pronouncement of sentence because the court

did not orally state the amount of restitution.

The cases that Mathison cites as support for his argument are distinguishable. In those

cases, the courts failed to include restitution in orally pronouncing sentence after the defendants

were convicted. *See Sauceda*, 309 S.W.3d at 769-70 (oral pronouncement following conviction

by jury); *Alexander*, 301 S.W.3d at 363-64 (oral pronouncement following revocation of deferred

adjudication community supervision); *Weir v. State*, 252 S.W.3d 85, 86-88 (Tex.App.--Austin

2008)(oral pronouncement following revocation of deferred adjudication community supervision), *rev'd in part on other grounds*, 278 S.W.3d 364 (Tex.Crim.App. 2009). Here, the trial court did not orally state the amount of restitution when placing Mathison on deferred adjudication community supervision. Mathison was neither convicted nor sentenced when he was placed on deferred adjudication. *See Taylor*, 131 S.W.3d at 500, 502. Restitution is simply a condition of his community supervision. Therefore, it is not clear that the statutory requirement of orally pronouncing sentence is applicable. *See* TEX.CODE CRIM.PROC.ANN. art. 42.03, § 1(a)("[S]entence shall be pronounced in the defendant's presence."); *Speth v. State*, 6 S.W.3d 530, 532 (Tex.Crim.App. 1999)("[C]ommunity supervision . . . is not part of the 'sentence,' as . . . defined in the Code of Criminal Procedure.").

Assuming the requirement applies, we agree with the State that Mathison failed to preserve any error. *See* TEX.R.APP.P. 33.1(a)(1). The trial judge advised counsel that he intended to make a written finding regarding restitution, and both attorneys acquiesced to this procedure. *See Lemos v. State*, 27 S.W.3d 42, 47 (Tex.App.--San Antonio 2000, pet. ref'd)(holding that appellant's complaints about specific items of restitution were not preserved because he acquiesced to the items). Moreover, Mathison did not file a motion for new trial or otherwise object when the court entered the written restitution order and the written conditions of community supervision. The Court of Criminal Appeals has noted that community supervision is not a right, but a contractual privilege and "by entering into the contractual relationship without objection, a defendant affirmatively waives any rights encroached upon by the terms of the contract." *Speth*, 6 S.W.3d at 534. A defendant who benefits from this privilege must complain to the trial court of any conditions that he finds objectionable. *Id*.

Mathison's first issue is overruled.

***Due Process***

In his third issue, Mathison asserts that he did not have notice that he could be ordered to pay more than $100,000 in restitution when he pled guilty to theft of property valued between $20,000 and $100,000. Therefore, he contends, his right to due process was violated.

As Mathison acknowledges, the property-value range for the offense does not limit the amount of restitution that may be awarded for a theft conviction. *See Campbell v. State*, 5 S.W.3d 693, 697, 701 (Tex.Crim.App. 1999). However, there are due process considerations in setting the restitution amount. *See id*. at 696, 701-02.

In *Campbell*, the appellant was ordered to pay $100,000 in restitution after he was charged with, and pled no-contest to, theft of property valued at $20,000 or more but less than $100,000. *Id*. at 695. He argued that his plea was involuntary because he did not realize that he was subject to pay restitution in an amount that exceeded the property-value range set forth in the indictment. *See id*. at 701. The Court of Criminal Appeals rejected this claim. *Id*. at 701-02. Although the trial court did not admonish the appellant about restitution at the plea hearing, the appellant and his attorney signed a written plea form, which requested that the trial court grant deferred adjudication "with conditions to include restitution to all victims of this scheme, whether pled in the indictment or not." *Id*. The appellant also stipulated that he stole more than $100,000 from the victims. *Id*. at 702. Accordingly, the Court of Criminal Appeals concluded that he must have understood that he was asking for a restitution order that exceeded the property-value range for the offense. *Campbell*, 5 S.W.3d at 702.

Unlike in *Campbell*, Mathison did not stipulate that he stole more than $100,000, and he

-8-

claims that he did not understand that he could be ordered to pay more than that amount.  As with

Mathison's first issue, Mathison failed to raise this issue in the trial court.  Consequently, it is not

preserved for review.  *See* TEX.R.APP.P. 33.1(a)(1); *see also Briggs v. State*, 789 S.W.2d 918,

924 (Tex.Crim.App. 1990)("Even constitutional errors may be waived by failure to object at

trial."); *cf. Issa v. State*, 826 S.W.2d 159, 161 (Tex.Crim.App. 1992)(holding that appellant

preserved issued by including it in a motion for new trial, because he had no opportunity to

object until after the complained-of action was taken).

In addition, Mathison has not presented a sufficient record for us to resolve his due

process complaint.  Although his appellate brief, which was written by counsel, states that

Mathison did not understand that restitution could exceed $100,000, there is no evidence to that

effect in the record.  It was Mathison's burden to provide a sufficient record to demonstrate error.

*Word v. State*, 206 S.W.3d 646, 651-52 (Tex.Crim.App. 2006).

Mathison's third issue is overruled.

### Ineffective Assistance of Counsel

In his fourth and fifth issues, Mathison asserts that his attorney was ineffective in failing

to make a closing argument and in failing to object to the lack of an oral pronouncement of the

amount of restitution.  He argues that these failures rendered his plea involuntary and resulted in

an excessive restitution order.

To prevail on his claim of ineffective assistance of counsel, Mathison must show that his

attorney's representation fell below an objective standard of reasonableness and that there is a

reasonable probability that the result of the proceeding would have been different if not for

counsel's errors.  *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S.Ct. 2052, 2064,

2068, 80 L.Ed.2d 674 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex.Crim.App. 2011). In evaluating counsel's performance, we must presume that it fell within the wide range of reasonably professional assistance. *Lopez*, 343 S.W.3d at 142. Any deficiency must be affirmatively demonstrated in the trial record; we cannot engage in retrospective speculation. *Id*. If the record does not reveal counsel's reasons for the challenged conduct, we must "assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Id*. at 143. The appellate record usually does not reveal counsel's reasons. *Id*. Therefore, the Court of Criminal Appeals has repeatedly held that ineffective assistance claims should generally be raised on collateral review rather than on direct appeal. *Id*. An ineffectiveness claim may be addressed on direct appeal only "[i]n the rare case in which trial counsel's ineffectiveness is apparent from the record." *Id*. "However, this is a difficult hurdle to overcome: the record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Id*.

The record does not reveal why counsel failed to make a closing argument or failed to object to the lack of an oral pronouncement. Mathison argues that there could be no sound reason for these decisions. He asserts that counsel needed to summarize the evidence and present a persuasive closing argument that only a minimal amount of restitution would be just. He also asserts that the trial court would have been required to sustain an objection to the lack of an oral pronouncement and that counsel would then have had a chance to respond to the amount found.

"[D]eference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." *Yarborough v.*

-10-

*Gentry*, 540 U.S. 1, 6, 124 S.Ct. 1, 4, 157 L.Ed.2d 1 (2003). The Supreme Court has recognized that "it might sometimes make sense to forgo closing argument altogether." *Id*. at 6, 124 S.Ct. at 4. Here, the prosecutor did not make a formal closing argument; he just asked the court to review State's Exhibit 1 and make its decision based on the exhibit. That is when the judge stated that he would like to take everything under advisement and would "get back with counsel" if he had any questions. As discussed above, defense counsel did not voice any objection to this procedure. State's Exhibit 1 contained the chart and spreadsheets described above. It also contained other charts and spreadsheets showing a total of $311,628.11, which was the amount the State sought in restitution. Defense counsel had already cross-examined Morris, who was the only witness called by the State, about how he arrived at this amount. He had also called Aubrey and Mathison as witnesses to discredit Morris's calculations and to show that the company was poorly managed. It appears that defense counsel's strategy was not to suggest a particular amount of restitution, but to achieve a small amount by creating confusion and doubt regarding the State's computation. The actual amount ordered--$193,700--was significantly less than the amount requested by the State.

Considering these facts, we cannot say that defense counsel's failure to make a closing argument was objectively unreasonable as a matter of law. Likewise, we can easily imagine a sound strategy for failing to object to the oral pronouncement. Defense counsel may have believed that if he pressed the judge for an immediate figure, the judge would have adopted the total amount requested by the State.

Mathison's fourth and fifth issues are overruled.

***Modification of Judgment***

-11-

In his sixth and final issue, Mathison notes that the judgment incorrectly names the offense as "theft of stolen property." In fact, he pled guilty to theft of property. The State agrees that the judgment should be reformed in this respect. Mathison's sixth issue is sustained.

### *Conclusion*

The judgment is modified to strike the word "stolen" from the description of the offense. In all other respects, the judgment is affirmed.

January 25, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)