Criminal Case Template






COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



JOSHUA VAN DANZI,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.

§


§


§


§


§

No. 08-02-00150-CR


Appeal from the


County Court at Law No. 4


of Collin County, Texas


(TC# 4-81543-01)


O P I N I O N



 Joshua Van Danzi was charged with possession of a criminal instrument and theft
of property valued between $50 and $500. After a bench trial, he was convicted,
sentenced to 180 days of confinement, and ordered to pay a $1,000 fine for each offense. 
Danzi has filed a joint brief that presents four issues. In this opinion, we will address
only those issues related to his theft conviction. Finding no reversible error on those
issues, we will affirm.

Speedy Trial


 In his first issue, Danzi argues he is entitled to an acquittal because the State failed
to provide him a speedy trial.

 Both the Sixth Amendment to the United States Constitution and Article I, § 10 of
the Texas Constitution guarantee an accused a speedy trial. The Texas Court of Criminal
Appeals has traditionally analyzed both state and federal speedy trial issues using the
four-factor balancing test established by the United States Supreme Court in Barker v.
Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). See Zamorano v. State, 84
S.W.3d 643, 648 (Tex. Crim. App. 2002). The four factors are: (1) the length of the
delay; (2) the reason for the delay; (3) the defendant's assertion of the right to a speedy
trial; and (4) the prejudice to the defendant resulting from the delay. Barker, 407 U.S. at
530, 92 S.Ct. at 2192.

 In reviewing the trial court's decision on a speedy trial claim, we apply a
bifurcated standard of review: an abuse of discretion standard for the factual
components, and a de novo standard for the legal components. Zamorano, 84 S.W.3d at
648. This means that we must independently weigh and balance the Barker factors. State
v. Munoz, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999). It also means, because Danzi
lost in the trial court on his speedy trial claim, that we must presume the trial court
resolved any disputed fact issues in the prosecution's favor. Zamorano, 84 S.W.3d at
648.

Length of the Delay

 The length of the delay factor entails a two-part analysis. First, this factor acts as a
triggering mechanism for consideration of the other factors. Barker, 407 U.S. at 530, 92
S.Ct. at 2192. Until there is a delay that is presumptively prejudicial, there is no need to
consider the other factors. Id., 92 S.Ct. at 2192. In general, courts have deemed delay
approaching one year to be unreasonable enough to trigger consideration of all the Barker
factors. Dragoo v. State, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003). Second, if
consideration of all the factors has been triggered, the court must then consider, as one
factor among several, the extent to which the delay stretched beyond the bare minimum
needed to trigger judicial examination of the speedy trial claim. Doggett v. U.S., 505 U.S.
647, 652, 112 S.Ct. 2686, 2691, 120 L.Ed.2d 520 (1992). The presumption that pretrial
delay has prejudiced the defendant intensifies over time. Id., 112 S.Ct. at 2691. And "the
delay that can be tolerated for an ordinary street crime is considerably less than for a
serious, complex conspiracy charge." Barker, 407 U.S. at 531, 92 S.Ct. at 2192. The
length of delay is measured from the time the defendant is arrested or formally accused. 
Dragoo, 96 S.W.3d at 313.

 Danzi was arrested on March 7, 2001, and was not tried until March 6, 2002. As
the State concedes, this one-year delay triggers consideration of all the Barker factors. 
Furthermore, Danzi was charged with relatively uncomplex, ordinary street crimes--misdemeanor theft and possession of a criminal instrument.

Reason for the Delay

 Different weights should be assigned to different reasons for delay. Barker, 407
U.S. at 531, 92 S.Ct. at 2192. A deliberate attempt to delay trial to hamper the defense
should, of course, be weighed heavily against the State. Id., 92 S.Ct. at 2192. More
neutral reasons, such as negligence or crowded dockets should also be weighed against
the State, but less heavily than deliberate delay. Id., 92 S.Ct. at 2192. Valid reasons
should not be weighed against the State at all. Id., 92 S.Ct. at 2192. And, according to
the Texas Court of Criminal Appeals, delay that is attributable in whole or in part to the
defendant may constitute a waiver of the speedy trial claim. Munoz, 991 S.W.2d at 822.

 The information was filed on August 3, 2001, and the first setting of the case was
scheduled for September 6, 2001. Because the record is silent as to a reason for this six-month delay from the date of arrest, we will weigh this delay against the State, but only
slightly. See Dragoo, 96 S.W.3d at 314; Zamorano, 84 S.W.3d at 649-50.

 Danzi failed to appear on September 6, but he did appear the next day and agreed
to reset the case for October 1, 2001. We will not weigh this delay against the State. See
Munoz, 991 S.W.2d at 822.

 On October 1, Danzi requested counsel and the court appointed counsel for him. 
The case was then set for a plea hearing on October 29. We will not weigh the period in
which the parties were negotiating a plea against the State. See id. at 824 ("[D]elay
caused by good faith plea negotiations is a valid reason for the delay and should not be
weighed against the prosecution.").

 On October 29, the case was reset for a bench trial on January 31, 2002. Danzi's
appellate counsel, who was also trial counsel, concedes that Danzi did not object to this
resetting and that he gained certain tactical advantages in deciding to carry the motion to
suppress with the trial. Therefore, we will not weigh this delay against the State. See id.
at 822.

 On January 31, the court granted the State's motion for a continuance, resetting the
case for March 1, 2002. According to the verified motion for a continuance and the
prosecutor's testimony at the speedy trial hearing, the continuance was sought because the
State had been unable to subpoena or contact the victim. The prosecutor claimed that she
had left phone messages and business cards at the victim's residence, that a subpoena had
been issued, and that a constable had waited at the victim's residence for lengthy periods
to serve the subpoena. But, as Danzi points out, the victim did appear for court later in
the day after the continuance was granted. On March 1, the case was reset to March 6,
and the court issued a bench warrant for the victim. Because the trial court ruled against
Danzi on his speedy trial claim, we presume the court found that the prosecutor was not
negligent in failing to secure the victim's appearance. See Zamorano, 84 S.W.3d at 648. 
A missing witness is a valid reason for delay. Barker, 407 U.S. at 531, 92 S.Ct. at 2192. 
We therefore do not weigh this delay against the State.

Assertion of the Right

 Because a defendant has no duty to bring himself to trial, failure to demand a
speedy trial does not result in waiver of the right. Id. at 527-28, 92 S.Ct. at 2190-91. But
the defendant's assertion of his right to a speedy trial is entitled to strong evidentiary
weight in determining whether he has been deprived of the right. Id. at 531-32, 92 S.Ct.
at 2192-93. Failure to assert the right will make it difficult for a defendant to prove that
he was denied a speedy trial. Id. at 532, 92 S.Ct. at 2193.

 Danzi did not assert his right to a speedy trial until March 4, 2002. On that date,
he filed a motion to set aside the information and a motion for a speedy trial. The motion
for a speedy trial stated that Danzi would be prejudiced "should trial not be held on or
before March 6, 2002." March 6, 2002 is the date Danzi was actually tried.

Prejudice

 Prejudice must be assessed in light of the interests a speedy trial is designed to
protect. Barker, 407 U.S. at 532, 92 S.Ct. at 2193. These interests are: (1) preventing
oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and
(3) limiting the possibility that the defense will be impaired. Id., 92 S.Ct. at 2193. Of
these three, the most serious is the last, because the inability of the defendant to prepare a
defense skews the fairness of the entire system. Id., 92 S.Ct. at 2193.

 Danzi posted bond on the day he was arrested and was apparently not incarcerated
while he waited to be brought to trial. We recognize that even though he was not
incarcerated, he faced restraints on his liberty. See id. at 533, 92 S.Ct. at 2193. Still, we
conclude that the interest in preventing oppressive pretrial incarceration does not weigh
heavily here. See Zamorano, 84 S.W.3d at 652.

 Danzi testified that he had been "stressed out" and had suffered some anxiety and
concern about the pending charges. He also testified that he had been accepted to a
school in Arizona, but the school would not allow him to attend until the charges were
resolved. On cross-examination, he acknowledged that he had other criminal cases
pending. Danzi testified that he had lost income because he had to take time off from
work each time the case was set. On cross-examination, he admitted that he did not work
between October and January. Because the trial court ruled against Danzi, we presume
the court did not credit his testimony about stress and lost wages. See Zamorano, 84
S.W.3d at 648. Furthermore, the fact that other charges were pending against him cuts
against his claim that resolution of these charges would have freed him to attend school. 
The interest in minimizing anxiety and concern thus does not weigh heavily.

 Finally, Danzi did not suggest below or in this Court how his defense was impaired
by the delay. The failure to demonstrate any specific prejudice is not fatal to a speedy
trial claim. Zamorano, 84 S.W.3d at 652 n.49. But this failure does indicate that the
interest in limiting impairment of the defense is not strongly implicated. Id. at 652.

Balancing the Factors

 Having considered the four Barker factors, we conclude that Danzi was not denied
his right to a speedy trial. Although there was a delay of a year in a noncomplex case, the
reasons for the delay do not weigh heavily against the State. Part of the delay was due to
a tactical decision by defense counsel, and another part of the delay was due to a missing
witness. The prejudice factor weighs against finding a violation because there is no
indication that the defense was impaired and Danzi was not incarcerated pending trial. 
Lastly, we note that Danzi did not assert his right to a speedy trial for nearly a year, and
the trial was held only two days after he raised the issue.

Sufficiency of the Evidence


 In his third issue, Danzi argues that the evidence is legally and factually
insufficient.

Standard of Review

 To determine whether the evidence is legally sufficient, we view the evidence in
the light most favorable to the verdict to determine whether a rational fact finder could
find the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979). The fact finder,
here the trial judge, is the sole judge of the weight of the evidence and the credibility of
the witnesses. Drost v. State, 47 S.W.3d 41, 44 (Tex. App.--El Paso 2001, pet. ref'd).

 To determine whether the evidence is factually sufficient, we view all the evidence
in a neutral light, rather than in the light most favorable to the verdict. Johnson v. State,
23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim.
App. 1996); Nunez v. State, 27 S.W.3d 210, 218 (Tex. App.--El Paso 2000, no pet.). We
review the evidence weighed by the fact finder that tends to prove the existence of the
elemental fact in dispute and compare it with the evidence that tends to disprove that fact.
Johnson, 23 S.W.3d at 7; Nunez, 27 S.W.3d at 218. We must reverse if the proof of guilt
is so obviously weak as to undermine confidence in the fact finder's determination, or if
the proof of guilt, although adequate standing alone, is greatly outweighed by contrary
proof. Johnson, 23 S.W.3d at 11. Although we are authorized to disagree with the fact
finder's determination, we must nevertheless employ appropriate, but not absolute,
deference to prevent substituting our judgment for that of the fact finder. Id. at 7-9;
Nunez, 27 S.W.3d at 218. "The authority . . . to disagree with the fact finder's
determination is appropriate only when the record clearly indicates such a step is
necessary to arrest the occurrence of a manifest injustice." Johnson, 23 S.W.3d at 9.

 In conducting our review of the sufficiency of the evidence, we consider all the
evidence, whether properly or improperly admitted. Wilson v. State, 7 S.W.3d 136, 141
(Tex. Crim. App. 1999); Arzaga v. State, 86 S.W.3d 767, 777-78 (Tex. App.--El Paso
2002, no pet.).

The Evidence

 Danzi was charged with unlawfully appropriating a compact disc player with a
value of $50 or more, but less than $500, from H. Velasquez, without his effective
consent. See Tex. Pen. Code Ann. § 31.03(a), (b)(1), (e)(2)(A)(i) (Vernon 2003). The
following evidence was adduced at trial.

 Plano Police Officer Frank Dockery testified that on March 7, 2001, at
approximately 3 a.m., he was dispatched to the North Cypress area on a "dog barking
call." When he arrived, he noticed a car at 2722 North Cypress with a broken window, an
open trunk, and wires coming out of the dashboard where a stereo had apparently been. 
Officer Dockery knocked on the door of the house at 2722 North Cypress and got the
occupant, Humberto Velasquez, out of bed. Velasquez said that he was the owner of the
car and that there were some items missing from it.

 Officer Ronald Kress testified that he was dispatched to backup Officer Dockery. 
At some point after he was dispatched, Officer Dockery told him that a stereo and some
other items had been taken from Velasquez's car. While he was on his way, he made a
traffic stop of a vehicle in the area. Danzi was the driver of the vehicle and Jerry Payne
was a passenger.

 Other officers arrived at the scene of the traffic stop, and the officers searched the
vehicle. Officer Kress testified that during the search, "[i]tems were located in the trunk
and recovered that were later determined to be stolen property from the burglary of the
motor vehicle that had occurred at 2722 North Cypress." One of the items found in the
trunk was a CD player. The officers also found a slim jim, two different types of
screwdrivers, and a flashlight.

 Officer Kress testified that he asked Officer Dockery to bring Velasquez to the
scene of the traffic stop to determine whether the CD player was his. Officer Dockery
testified that he took Velasquez to the "traffic stop location around the corner where Mr.
Velasquez identified his property."

 Officer Kress testified that the CD player found in the trunk of Danzi's car had a
black mark on the upper corner of the faceplate. The prosecutor asked Officer Kress,
"Did the victim point out the black marker on the model number to identify his stereo
equipment, the CD player?" Over defense counsel's hearsay objection, Officer Kress
responded, "Yes, ma'am, he did."

 Regarding the value of the CD player, Officer Kress gave the following testimony:

 Q Are you familiar with the value of a CD player such as the one that
you observed in Mr. Danzi's trunk that night?


 A The general price range, yes, ma'am.


 Q What was the value of that CD player that was in Mr. Danzi's trunk?


 A Between $200 and $300.

. . .


 Q Have you shopped for CD players around the time that this event
occurred?


 A Not around that exact time, no, ma'am, but just within the last five
months.


 Q And you've actually looked at CD players similar to that?


 A Yes, ma'am.


 A written statement made by Danzi was admitted into evidence without objection. 
In the statement, Danzi reported that Payne called him and asked if he wanted to go car-jacking. Danzi told him "no but that if he got me a car stereo that I would buy it from
him." At around 2 a.m., he went to Payne's house and Payne showed him a car stereo, car
amplifier, and big box with two subwoofers. They put the stereo in Danzi's trunk and
headed for Danzi's girlfriend's house. While they were on their way, Payne told Danzi to
"drive by where he jacked it." The statement also recites, "The tools in my care [sic]
were not used by Jerry Payne to break into any vehicles. The slim jim was used by me 5
months ago to get my fiancé's keys out of her car."

 At trial, Danzi reiterated that Payne called him and told him he had a stereo for
him to "check out" and that on the way to Danzi's girlfriend's house, Payne suggested
that they drive by the car where Payne had gotten the stereo. He testified that a couple of
weeks earlier he had locked his keys in his car at the carwash. His girlfriend bought the
slim jim at an Auto Zone and the owner of the car wash used it to retrieve his keys. He
explained the inconsistency between this version of events and the version presented in
his written statement by saying that both he and his girlfriend have a slim jim. He stated
that the other tools were in his car because he works at a mechanic shop.

Ownership

 Noting that the victim did not testify, Danzi argues that the evidence is insufficient
to establish that "H. Velasquez" was the owner of the CD player.

 Officer Dockery testified that Humberto Velasquez was the occupant of the house
at 2722 North Cypress, that Velasquez owned the car parked there, and that some items
were missing from the car. He also testified that he took Velasquez to the "traffic stop
location around the corner where Mr. Velasquez identified his property."

 Moreover, Officer Kress testified that "[i]tems were located in the trunk and
recovered that were later determined to be stolen property from the burglary of the motor
vehicle that had occurred at 2722 North Cypress." Officer Kress specifically noted that a
CD player was found in the trunk. Officer Kress also testified that the CD player had a
black mark on it and that the victim pointed out the black mark to identify the CD player
as his.

 A rational fact finder could determine from this evidence that "H. Velasquez" was
the owner of the CD player found in Danzi's trunk. The evidence is not so obviously
weak as to undermine confidence in the fact finder's determination, and there is no
contrary proof. Accordingly, the evidence is both legally and factually sufficient to
establish the element of ownership. 

Effective Consent

 Danzi argues that the evidence is insufficient to establish that the CD player was
appropriated without Velasquez's effective consent. Lack of effective consent may be
proven by circumstantial evidence. Smith v. State, 710 S.W.2d 947, 948 (Tex. App.--Dallas 1986, no pet.).

 The evidence suggests that Velasquez was asleep when the CD player was taken. 
When Officer Dockery got him out of bed, he stated that items were missing from his car. 
 And Officer Dockery discovered the car with its trunk open, a window broken out, and
wires sticking out of the dashboard.

 A rational fact finder could infer from this evidence that the CD player was
appropriated without Velasquez's consent. Again, the evidence is not so obviously weak
as to undermine confidence in the fact finder's determination, and there is no contrary
proof. Accordingly, the evidence is both legally and factually sufficient to establish the
element of effective consent.

Value

 Danzi argues that the evidence is insufficient to establish that the value of the CD
player was $50 or more but less than $500. In particular, he argues that the State only
presented evidence regarding replacement cost and that the State presented no evidence of
the value of the CD player at the time of the offense.

 "Value" is statutorily defined as either "fair market value . . . at the time and place
of the offense" or if the fair market value cannot be ascertained, "the cost of replacing the
property within a reasonable time after the theft." Tex. Pen. Code Ann. § 31.08(a)
(Vernon 2003). "Fair market value" has been defined in the case law as what the property
would sell for in cash, given a reasonable time for selling it. Keeton v. State, 803 S.W.2d
304, 305 (Tex. Crim. App. 1991).

 The only evidence regarding value is the testimony of Officer Kress quoted above. 
The prosecutor asked him the value of "that CD player" that was in Danzi's trunk. She
also asked Officer Kress if he had shopped for CD players "similar" to the one found in
Danzi's trunk. These questions did not inquire as to what it would cost to replace the CD
player or what it would cost for a new CD player. Consequently, a rational fact finder
could infer that Officer Kress's testimony related to fair market value, rather than
replacement cost.

 The offense was committed in March 2001, and the trial was held in March 2002. 
Officer Kress testified that he had shopped for similar CD players within the last five
months. Thus, he described the value of the CD player seven to twelve months after the
date of the offense. The Texas Court of Criminal Appeals has held that testimony
regarding market value nine months after the date of the offense was sufficient to
establish value at the time of the offense. See Brown v. State, 460 S.W.2d 925, 926 (Tex.
Crim. App. 1970). In Brown, as in this case, the accused did not object to the manner of
proving value. See id. The Court of Criminal Appeals has made clear that if the accused
does not approve of the State's manner of proving value, he must object at trial. See, e.g.,
Brown v. State, 640 S.W.2d 275, 279 (Tex. Crim. App. 1982). Based on these authorities,
and noting that there was no contrary proof, we conclude that the evidence was both
legally and factually sufficient to establish the fair market value of the CD player.

Hearsay

 In his second issue, Danzi complains about the admission of hearsay evidence. We
review evidentiary rulings on hearsay objections for an abuse of discretion. Head v.
State, 4 S.W.3d 258, 262 n.4 (Tex. Crim. App. 1999).

 As noted above, the prosecutor asked Officer Kress, "Did the victim point out the
black marker on the model number to identify his stereo equipment, the CD player?" 
Kress responded, "Yes, ma'am, he did." Danzi argues that Velasquez's act of pointing
was intended as a substitute for verbal expression and was hearsay. The State asserts that
the conduct was not meant as a substitute for verbal expression.

 "Hearsay" is defined as "a statement, other than one made by the declarant while
testifying at the trial or hearing, offered in evidence to prove the truth of the matter
asserted." Tex. R. Evid. 801(d) (emphasis added). "Statement," in turn, is defined as
"(1) an oral or written verbal expression or (2) nonverbal conduct of a person, if it is
intended by the person as a substitute for verbal expression." Tex. R. Evid. 801(a)
(emphasis added).

 Officer Kress's testimony indicates that Velasquez pointed to the mark to identify
the CD player. Thus, the conduct of pointing substituted for verbally informing Officer
Kress that the CD player belonged to him. The only apparent reason for presenting this
evidence was to prove that the CD player did, in fact, belong to Velasquez. We therefore
conclude that Velasquez's nonverbal conduct of pointing to the mark on the CD player
amounted to hearsay. Cf. Graham v. State, 643 S.W.2d 920, 927 (Tex. Crim. App. 1981)
(testimony that victim made a shooting motion with her hand when shown the defendant's
photograph after being asked to identify the shooter was hearsay).

 We note, however, that other testimony was admitted without objection to
establish that Velasquez owned the CD player. Officer Dockery testified that he "took
Mr. Velasquez . . . down to the traffic stop . . . where Mr. Velasquez identified his
property." Officer Kress testified that "[i]tems were located in the trunk and recovered
that were later determined to be stolen property from the burglary of the motor vehicle
that had occurred at 2722 North Cypress." Admission of hearsay evidence is harmless
when the same or similar evidence is admitted without objection. Thomas v. State, 621
S.W.2d 158, 164 (Tex. Crim. App. [Panel Op.] 1981); Nixon v. State, 940 S.W.2d 687,
690 (Tex. App.--El Paso 1996, pet. ref'd). Accordingly, admission of the hearsay
evidence in this case was not reversible error.

Conclusion

 For the reasons stated herein, the judgment of the trial court is affirmed.


 SUSAN LARSEN, Justice

March 27, 2003


Before Panel No. 1

Larsen, McClure, and Chew, JJ.


(Do Not Publish)